## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DARLENE W. LOW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CV-268-TCK-TLW** |
| | ) | |
| **THE HONORABLE STEVEN** | ) | |
| **CHU, Secretary, Department (Agency)** | ) | |
| **of Energy, in his official capacity** | ) | |
| **as an officer of the United States,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment (Doc. 9) and

Defendant's Motion to Dismiss and/or For Summary Judgment (Doc. 14).

## I.      Factual Background

Plaintiff Darlene Low, represented by her husband Frederick Low, has filed several federal

lawsuits related to her employment with Southwestern Power Administration ("SWPA"), a federal

agency under the United States Department of Energy ("DOE").  In 1999, Plaintiff filed a lawsuit

in the Northern District of Oklahoma alleging that her position as Safety & Occupational Health

Manager should have been classified at the Grade 14 level, but was instead classified at a lower level

based on her gender.[1]  The lawsuit was resolved by a written Stipulation for Compromise Settlement ("settlement agreement"), which provides:

> Defendant will, through proper channels, structure a new GS-14 position to be filled by Plaintiff.  In order to effectuate such, Defendant will create a new GS-13/14 position entitled Special Assistant for Environmental, Safety and Health.  Plaintiff will fill such position effective October 8, 2000, as a grade GS-14.

(Pl.'s Mot. for Partial Summ. J., Exhibits at 4.)[2]

On June 23, 2009, Plaintiff filed a Complaint in this Court against Defendant Steven Chu ("Chu"), Secretary of the DOE, entitled "Personal and Class Action: Title VII of Civil Rights Act - Pattern and Practice of Preventing Females to Achieve Senior Management Positions."  (*See Low v. Chu*, 09-CV-398-CVE-PJC ("09-CV-398"), Compl., Doc. 2.)  On August 6, 2009, Plaintiff filed a second lawsuit in this Court against Chu, alleging that "she was intentionally discriminated against because of her sex and/or retaliation for a discrete employment action: failure to be permitted to apply for her supervisor's position in October of 2008."  (*Low v. Chu*, 09-CV-505-CVE-PJC ("09-CV-505"), Am. Compl., Doc. 33.)  On August 13, 2009, Plaintiff filed a lawsuit in the United States Court of Federal Claims ("Court of Federal Claims"), alleging that Chu breached the settlement

---

[1]  The federal Office of Personnel Management ("OPM") classifies federal positions in accordance with a "position-classification plan established by OPM under chapter 51 of title 5, United States Code."  5. C.F.R. § 511.101(c).  Under this plan, "[g]rade means all classes of positions which (although different with respect to kind or subject-matter of work) are sufficiently equivalent as to (1) level of difficulty and responsibility, and (2) level of qualification requirements of the work, to warrant their inclusion within one range of rates of basic pay." *Id.* at § 511.101(d).  In this case, the parties refer to Plaintiff's OPM classification as Grade 14 or GS-14.

[2]  Plaintiff did not separately identify exhibits attached to her motion but instead filed them as one exhibit with hand-written page numbers at the bottom.

agreement by transferring her environmental duties to a younger female. *See Low v. United States*, 90 Fed. Cl. 447 (Dec. 7, 2009).

On September 21, 2009, Northern District of Oklahoma Judge Claire V. Eagan granted Defendant's motion to strike Plaintiff's Complaint in 09-CV-398 and permitted Plaintiff to file an Amended Complaint. (09-CV-398, Doc. 12.) Plaintiff then filed her Amended Complaint in 09-CV-398 asserting the following claims: (1) "Title VII, Retaliation, Immediate and Deceptive Non Implementation of Settlement Agreement Continuing Violation"; (2) "Title VII, Retaliation, Continued Deception and Denial by SWPA and their Refusal to Correct Continuing Violation"; (3) "Title VII, Retaliation, Removal of Specific Duties as Agreed to in 2000 Settlement Agreement Continuing Violation"; (4) "Title VII, Hostile Work Environment, Continuing Violation;" and (5) "Age Discrimination in Employment Act." (09-CV-398, First Am. Compl., Doc. 13.)[3]

On December 7, 2009, the Court of Federal Claims dismissed Plaintiff's case for lack of subject matter jurisdiction, holding that 09-CV-398 was a first-filed case arising from the same operative facts and requesting the same relief and was therefore barred by 28 U.S.C. § 1500.[4]

---

[3] Plaintiff initially asserted other claims, including breach of the settlement agreement, but Judge Eagan struck the original complaint as non-compliant with Federal Rule of Civil Procedure 8(a)(2).

[4] This statute provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in any respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Although Plaintiff had amended her claims in 09-CV-398 to omit any breach of contract claim by the time of the Court of Federal Claims' decision, the court held that it was bound to consider the original complaint in 09-CV-398 and that the two lawsuits were "the same for purposes of § 1500." *Low*, 90 Fed. Cl. at 451.  The court noted the "harsh outcome" but explained that such outcome was caused by Plaintiff's counsel's "missteps."  *See id.* at 456.

In January and February 2010, Judge Eagan granted summary judgment and/or dismissed Plaintiff's first, second, third, and fifth claims in 09-CV-398 based on Plaintiff's failure to exhaust and/or timely exhaust her administrative remedies.  (*See* 09-CV-398, Docs. 22, 35.)  Judge Eagan subsequently consolidated 09-CV-398 and 09-CV-505.

On May 4, 2010, Plaintiff requested a "desk audit" of her position and expressed concern that her duties were less than what was certified in her Grade 14 position description.[5]  On July 29, 2010, upon engagement as a consultant by SWPA, OPM employee Douglas Robinson ("Robinson") performed a desk audit of Plaintiff's position and classified her position a Safety & Occupational Health Specialist, Grade 13.  Plaintiff was present for this desk audit and was interviewed by Robinson. Defendant did not lower Plaintiff's grade or increase her duties to warrant a Grade 14 classification.

On November 16, 2010, in the consolidated action, Judge Eagan (1) granted summary judgment to Defendant on Plaintiff's gender-based hostile work environment claim because Plaintiff failed to raise any genuine issue of fact "that gender discrimination existed at SWPA, let alone link that discrimination to actions taken against her"; (2) granted summary judgment to Defendant on

---

[5]  "Desk audit" is a term used by the parties to refer to the process by which OPM employees made their grade classification decisions in this case.

Plaintiff's retaliatory hostile work environment claim because Plaintiff did not show that any alleged retaliatory incidents were sufficiently severe or pervasive;[6] (4) granted summary judgment to Defendant on the gender discrimination claim alleged in 09-CV-505 because Plaintiff failed to show that the alleged adverse employment action (not being permitted to apply for a promotion) affected her differently than men; and (5) granted summary judgment to Defendant on the retaliation claim alleged in 09-CV-505 because Plaintiff failed to offer evidence of any causal connection between her 1999 lawsuit and the alleged retaliatory adverse action.   (*See* 09-CV-398, Doc. 113.) Approximately one week later, on November 22, 2010, Plaintiff filed a second lawsuit in the Court of Federal Claims alleging breach of the settlement agreement.

On November 30, 2010, Yvonne Ryan ("Ryan"), another OPM auditor, informed Plaintiff that she would be conducting a desk audit of Plaintiff's position ("11/30/10 Notice of Second Audit").   On or around December 13, 2010, Plaintiff initiated contact with the DOE Equal Employment Opportunity ("EEO") office.  On January 14, 2011, Ryan came to SWPA to conduct her audit, but Ryan did not meet with Plaintiff.  According to Plaintiff, her supervisors "intercepted" Ryan and prevented her from conducting the audit in Plaintiff's presence ("1/14/11 Audit Exclusion").

On the same date of Ryan's visit, Plaintiff sent a letter to Charles Marquez ("Marquez"), a DOE EEO officer.  Plaintiff stated:

---

[6] Plaintiff stated that her hostile work environment claim was based solely on gender animus.  (09-CV-398, Doc. 113, at 10-11.)  Out of an abundance of caution, Judge Eagan also addressed the hostile work environment claim as one based on retaliatory animus.  (*Id.* at 18-21.) Judge Eagan assumed that a retaliatory hostile work environment claim was actionable but noted the lack of Tenth Circuit authority.  (*Id.* at 18 n.35.)

> I hereby wish to amend my complaint . . . to include an event which took place at work today, relating to the audit of my position that I originally requested on May 4, 2010.  The position was eventually audited by an OPM Classifier from San Francisco and the results made known to me in early August, 2010.  SWPA did not like the results, as it again demonstrated noncompliance with my settlement agreement.
>
> I was told that SWPA did not have to accept the results and would be getting another opinion.  Apparently SWPA wanted to "fish" for a better answer, and was in no hurry to do so.
>
> Now, a full six months later, a Yvonne Ryan, another alleged OPM classifier from Kansas City was to audit my position at 9 AM.  I received an email from her at 7:17 AM discussing the meeting, but she never showed.  The 'leadership' was very aware of the situation, and it appears Ms. Ryan was intercepted . . . .
>
> I wish to include the events of the day as an additional act of retaliation for my requesting a desk audit to shown [sic] noncompliance with the agreement.  I also feel this was another incident of a hostile work environment based on retaliation.

(Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. A-36.)[7]  The next day, January 15, 2011, Plaintiff filed her formal complaint with the EEO.  Receipt of the complaint and the predated "amendment" was acknowledged by letter from Marquez dated February 7, 2011. (*See id.* at A-37 ("Your client's formal complaint was dated and filed on January 15, 2011.  Although the Notice to Amend Complaint was dated January 14, 2011, predating her formal complaint, we have received your [email] which confirms your client's intent to amend.").)

On April 20, 2011, Marquez sent a Notice of Dismissal of Complaint of Discrimination, wherein he stated that the following claims were dismissed:

> 1. Whether your client was discriminated against and subjected to a hostile work environment on the basis of retaliation when she alleges that Southwestern continues to breach her 2000 settlement agreement by:
>    a. Refusing to acknowledge the findings of the desk audit performed in July 2010 which show that her existing duties classify at a GS-

---

[7] Plaintiff's exhibits attached to her response are all included within Exhibit A, with page numbers 1-57.

13 level when the settlement agreement states
she is to be a GS-14, and

b.      Ordering an additional desk audit, scheduled
to occur on January 14, 2011, and intercepting
the Office of Personnel Management (OPM)
classifier who did not meet with her as
scheduled.

2.      Whether your client was discriminated against and subjected
to hostile work environment on the basis of gender when she
alleges she cannot be promoted as a result of Southwestern's
continued breach of the 2000 settlement agreement.

(Compl., Ex. 1.)  A few weeks later, on May 3, 2011, Plaintiff filed the instant lawsuit, asserting the

following: (1) the 11/30/10 Notice of Second Audit and 1/14/11 Audit Exclusion constitute

retaliation for Plaintiff's prior actions of protected opposition to discrimination, in violation of Title

VII ("Retaliation Claim"); (2) the 11/30/10 Notice of Second Audit and 1/14/11 Audit Exclusion

evidence a hostile work environment motivated by gender and/or retaliatory animus ("Hostile Work

Environment Claim");[8] and (3) compensation discrimination, in violation of Title VII, as amended

by the Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act") ("Pay Discrimination Claim").[9]

On June 1, 2011, the Court of Federal Claims dismissed Plaintiff's second lawsuit, again

based upon lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500.  The court reasoned

that, when Plaintiff filed the case before it, 09-CV-398 remained "pending" within the meaning of

---

[8]  The Complaint alleges: "Plaintiff has been treated differently or discriminated against
for continuing to seek gender equality and because she has participated in protected EEO
activities above described."  (Compl. ¶ 20.)  Arguably, this allegation only asserts a retaliatory
hostile work environment; however, the Court will address both theories out of an abundance of
caution.

[9]  Plaintiff clarified in her briefing that this cause of action arises under Title VII, as
amended by the Ledbetter Act, and the Court construes the Complaint as asserting a Title VII
claim.  Therefore, the Court will not address Defendant's argument that the Ledbetter Act does
not create an independent cause of action.

7

§ 1500 because Plaintiff's right to appeal "was still available and was not renounced by the plaintiff." *Low v. United States*, No. 10-811, 2011 WL 2160880, at * 6 (Fed. Cl. June 1, 2011). Although Plaintiff attempted to exclude breach of the settlement agreement from the legal issues presented on appeal, the court found that the operative facts set forth in the appellate briefing "continue[d] to originate from the 2000 settlement agreement," such that the case before it was jurisdictionally barred by § 1500. *See id.* at * 6-7.

In this litigation, on June 28, 2011, Plaintiff filed a motion for partial summary judgment on the Pay Discrimination Claim. On August 1, 2011, Defendant filed its motion to dismiss and/or for summary judgment on all three of Plaintiff's claims. Specifically, Defendant moved for dismissal and/or summary judgment on the Retaliation Claim, summary judgment on the Hostile Work Environment Claim, and dismissal of the Pay Discrimination Claim.[10]

## II.      Retaliation Claim

Plaintiff styled her retaliation claim as "Retaliation, Discrete Act Occurring on November 30, 2010 and January 14, 2011," (Compl. at 4), referencing the 11/30/10 Notice of Second Audit and

---

[10] On November 21, 2011, before briefing was ripe on these pending motions, Plaintiff filed another case in this district. *See Low v. Chu*, 11-CV-731-GKF-TLW ("11-CV-731"). In that case, Plaintiff alleges the following claims:

(1) gender discrimination in compensation since 2000; (2) retaliation for Plaintiff's attempts to correct position description and fraudulent certifications – discrete act date, July 11, 2011; (3) retaliation for position reassignment on July 31, 2011 . . .; and (4) breach of contract resulting in financial loss.

(11-CV-731, Compl.)

1/14/11 Audit Exclusion.  Plaintiff timely exhausted her administrative remedies for these two retaliatory events, and Defendant has moved for summary judgment.[11]

### A.    Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.*  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### B.    Analysis

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action."  *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215

---

[11]   The Court does not construe Plaintiff's Complaint as alleging any acts of retaliation that were at issue in prior lawsuits or that were not timely raised with the EEO.  Therefore, the Court finds no reason to reach Defendant's motion to dismiss the Retaliation Claim based on issue preclusion and/or failure to timely exhaust administrative remedies.  (*See* Def.'s Mot. to Dismiss and/or for Summ. J. 11-14.)

(10th Cir. 2010) (internal quotation marks omitted).  Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a genuine issue of fact as to the second element.

The Tenth Circuit liberally defines the phrase "adverse employment action" and takes a case-by-case approach, examining the unique factors in each case.  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).  In general, only those actions that "constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  *Id.* (internal quotations omitted).  However, certain actions that cause harm to future employment prospects, such as a negative job reference, can also be considered an adverse employment action.  *See id.* (citing *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004)).  If seeking to show that harm to future employment prospects constitutes an adverse employment action, "a plaintiff must show that the alleged adverse action caused more than de minimis harm to or a de minimis impact upon an employee's job opportunities or status."  *Id.* (internal quotations omitted).

### 1.    11/30/10 Notice of Second Audit

Construing the facts favorably to Plaintiff, Defendant went "fishing" for the second desk audit because it did not like the results of Robinson's audit, which was ordered at Plaintiff's request.  Plaintiff argues that, under these circumstances, the 11/30/10 Notice of Second Audit is itself an adverse employment action.  In cases involving federal desk audits, courts have held that a refusal to upgrade a position following an audit can constitute an adverse employment action.  *See, e.g., Norman v. Rubin*, No. 99-123, 1999 WL 739433, at * 2 (4th Cir. Sept. 22, 1999) (holding that a federal customs employee was subjected to an adverse employment decision when her employer

refused to upgrade her position following a desk audit revealing she was entitled to such an upgrade).  Here, the question presented is whether the *decision* to conduct a second audit, when the employer is arguably unhappy with the results of an earlier audit requested by an employee, can constitute an adverse employment decision.  Even under the Tenth Circuit's liberal definition, the Court concludes that it cannot.  This decision cannot be said to have adversely affected Plaintiff because, as of the date of such event, it could not be labeled as positive or adverse.  It remained to be seen what the second audit would reveal and how SWPA would utilize the results.  Even assuming Defendant was "fishing" and trying to avoid Robinson's grade, Defendant did not yet know what its alleged fishing expedition would reveal and had not yet taken any adverse employment action.  Further, the Court is doubtful that a "fishing expedition" for a *higher* grade than that obtained in the original audit would constitute an adverse employment action, even under the unique circumstances presented.[12]  Therefore, the decision to conduct a second audit cannot be considered an adverse employment decision.

### 2.      1/14/11 Audit Exclusion

The only other adverse employment action at issue is the 1/14/11 Audit Exclusion.  The question is whether Plaintiff has created any genuine question of fact as to whether her exclusion from the audit process had more than a de minimis impact upon her employment opportunities or status.  Plaintiff has failed to do so.  First, Plaintiff has not demonstrated that a federal employee has

---

[12] This case is unique due to the settlement agreement.  Typically, a plaintiff would want a desk audit to result in a higher grade so that the employee would be entitled to more pay.  Here, Plaintiff requested a desk audit to show that her duties did not warrant her current grade, such that Defendant was out of compliance with the settlement agreement.  Plaintiff's allegation is that Defendant went "fishing" for a second desk audit that would result in a *higher* grade than that assigned by Robinson.

a right to be present during an audit or that her presence would have impacted the results.  Further, Plaintiff has failed to show that, had she been present and influenced Ryan to concur with Robinson that her duties warranted a Grade 13 classification, this would have somehow improved her employment status.  Defendant has maintained throughout this and prior lawsuits that Plaintiff's Grade 14 classification is "driven by the settlement agreement, not by general classification standards."  (Def.'s Mot. to Dismiss and/or for Summ. J. 17.)  Thus, Defendant has admitted that it would maintain Plaintiff's Grade 14 status, even where her duties fall short.  This renders it largely irrelevant whether Ryan's desk audit resulted in a Grade 13 or 14 classification.

Plaintiff's true grievance is that a Grade 14 classification without Grade 14 duties precludes opportunities for advancement and is a breach of the language and spirit of the settlement agreement. But the sole question before the Court is whether Defendant retaliated against Plaintiff when it decided to conduct a second audit and then excluded her from the process.  The Court finds these alleged retaliatory actions to have only a de minimis, rather than a significant, impact upon Plaintiff's future employment status or prospects.  *Cf., e.g., Hillig*, 381 F.3d at 1035 (holding that retaliatory negative references that were communicated to a future employer carried a significant risk of harm to the plaintiff's future employment prospects and therefore constituted an adverse employment action); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir.1996) (holding that filing false criminal charges against employee carried significant risk of harm to his future employment opportunities and therefore constituted adverse employment action).

III.     **Hostile Work Environment Claim**

Plaintiff styled her Hostile Work Environment Claim as "Hostile Work Environment, Discrete Act Occurring on November 30, 2010 and January 14, 2011," (Compl. at 5), again referencing the 11/30/10 Notice of Second Audit and 1/14/11 Audit Exclusion.  Plaintiff alleges:

> Defendant's continual refusal to correct their intentional breach of Plaintiff's Settlement Agreement, as recently illustrated by a discrete act event of November 30, 2010 and January 14, 2011, were both sufficiently severe and pervasive, such that Plaintiff's terms and conditions of her employment have been negatively altered and have created an abusive working environment, particularly Defendant's treatment of Plaintiff on January 14, 2011 and the subsequent denial of information, yet Plaintiff must continue to face those in management who have intentionally discriminated and refused to alter their behavior or amend their decision.

(*Id.* ¶ 21.)  Defendant moved for summary judgment on this claim.

A.     **Standard**

*See supra* Part II.A.

B.     **Analysis**

Construed liberally, Plaintiff alleges gender discrimination and retaliation based on a hostile work environment.

1.     **Gender  Discrimination**

To make out a claim of gender discrimination based on a hostile work environment, Plaintiff must demonstrate "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012).  With respect to the first element, Plaintiff has not presented any evidence that the 11/30/10 Notice of Second Audit or the 1/14/11 Audit Exclusion were motivated by Plaintiff's gender.  Specifically, Plaintiff has not presented evidence of any gender-based

comments or other circumstances surrounding these two workplace incidents. As with her previous lawsuits, Plaintiff has simply alleged certain workplace incidents and speculated that they were caused by her gender, rather than offering any evidence linking the incidents to gender animus. *See Low v. Chu*, No. 09-CV-398, 2010 WL 4736294, at * 6 (N.D. Okla. Nov. 16, 2010) (reasoning that none of the several incidents alleged by Plaintiff revealed gender-based discrimination and granting summary judgment on hostile work environment claim).

Plaintiff also cannot satisfy the second element because the two specific incidents complained of – receiving notice of a second audit and then being excluded from that audit process – are not sufficiently severe to create an abusive working environment. Plaintiff clearly disagrees with these decisions, and she believes they are a deliberate attempt by Defendant to circumvent Robinson's audit and ultimately circumvent its obligations in the settlement agreement. However, Plaintiff cannot show that Defendant carried out these decisions or communicated them to Plaintiff in a manner that was threatening, humiliating, abusive, or in any way harassing. Further, the totality of the circumstances also does not evidence any behavior that, while not sufficiently severe, is so pervasive as to constitute a hostile work environment. Plaintiff argues that Defendant has continually refused to correct its breach of the settlement agreement; however, Plaintiff has not presented evidence that Defendant has done so in a manner that is hostile or abusive.

####    2.    Retaliation

In an unpublished decision, the Tenth Circuit recently addressed a retaliatory hostile work environment claim without discussion of whether such claim was cognizable, thereby implying that such a cause of action is recognized in the Tenth Circuit.  *See Gorny v. Salazar*, 413 Fed. Appx. 103, 112 (10th Cir. 2011) (affirming grant of summary judgment on "retaliatory hostile work environment" claim).[13]   In order to demonstrate a retaliatory hostile work environment, Plaintiff must show that (1) the alleged harassment stemmed from retaliatory animus, *see Gorny*, 413 Fed. Appx. at 112, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment, *see Morris*, 666 F.3d at 663.

For the same reasons explained above, the Court finds that Plaintiff cannot demonstrate that any discrimination based on retaliatory animus was so severe or pervasive as to create an abusive working environment.  Specifically, neither of the two acts alleged in this case nor the totality of the circumstances demonstrate any severe or pervasive hostility, abuse, or harassment surrounding the alleged wrongful conduct.

## IV.    Pay Discrimination Claim - Defendant's Motion

Defendant moved to dismiss Plaintiff's Pay Discrimination Claim for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

_____

[13]  Prior to *Gorny,* the Tenth Circuit had not specifically addressed such a claim, and it was unclear whether such claim was cognizable.  *See Low*, 2010 WL 4736294, at * 7 ("The question has not been decided by the Tenth Circuit."); *Thorsberg v. Gen. Motors Corp.*, 2005 WL 2461169, at * 7 n.12 (W.D. Okla. Oct. 4, 2005) (stating that "it [i]s unclear whether there is a hostile work environment retaliation claim").

A.      **Standard**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to

16

include sufficient factual allegations, depends on context" and that whether a defendant receives fair

notice "depends on the type of case." *Id.*

## B.    Analysis

Title VII prohibits employers from discriminating against an individual with respect to

compensation because of membership in a protected class.  42 U.S.C. § 2000e-2(a)(1).  A pay

discrimination claim requires "proof of unequal pay between the employee and co-workers outside

the protected class doing the same work."  *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174,

1179 (10th Cir. 2011).  A Title VII pay discrimination claim is limited to factual situations involving

"unequal pay for equal work," and the "key to a successful claim is a showing that the employer

discriminatorily paid the employee too little for the position he or she occupies."  *Id.* at 1180-81.

In 2009, Congress passed the Ledbetter Act, which added the following language to Title

VII's provision governing time limits for filing an administrative charge:

> For purposes of this section, an unlawful employment practice occurs, with respect
> to discrimination in compensation in violation of this subchapter, when a
> discriminatory compensation decision *or other practice* is adopted, when an
> individual becomes subject to a discriminatory compensation decision or other
> practice, or when an individual is affected by application of a discriminatory
> compensation decision or other practice, including each time wages, benefits, or
> other compensation is paid, resulting in whole or in part from such a decision or
> other practice.

42 U.S.C.A. § 2000e-5(3)(A) (emphasis added).  Congress passed the Ledbetter Act in response to

the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co., Incorporated*, 550 U.S.

618, 622 (2007), in which the Supreme Court held that a plaintiff's pay discrimination claim was

untimely because her administrative charge was filed more than 300 days following the pay-setting

decision.  *Almond*, 665 F.3d at 1179.

In her Complaint, Plaintiff alleges the following in support of her Pay Discrimination Claim:

Plaintiff has been intentionally subjected to an unlawful employment practice from a long-established "other" compensation decision dating from September 2000, when Defendant chose to not implement a Settlement Agreement which ended a gender discrimination lawsuit between the parties for failure to promote and the breaking of the glass ceiling for females, which at the time was GS-14–there were none in 2000 or ever historically at SWPA.

. . .

Defendant is fully aware of its decision, but has since refused to place Plaintiff in a position with the required duties in order for Plaintiff to qualify under OPM experience requirement in order to be qualified for promotion and obtained increased compensation.

*Defendant's actions or adoption of this practice is either a direct compensation decision or "other practice" as envisioned by the [Ledbetter Act], as this decision was intended as a legally direct and decisive input into a compensation outcome–no additional pay grade increase-including, but not limited to, a job classification decision and/or work assignment, resulting in negative disparate pay.*

Defendant's intentional and continuing action has totally ended Plaintiff's advancement opportunities since 2000 and any hope of receiving the compensation or higher grade and its attendant, increased Thrift Fund contributions, and retirement benefits.

Plaintiff receives a discriminatory paycheck every fourteen days; thus, Plaintiff received a paycheck within 45 days of seeking EEO Counseling; Defendant's decision of eleven years ago is deemed an actionable event, refreshed by the receipt of each salary paycheck.

(Compl. ¶¶ 24, 26-29 (emphasis added).)

Plaintiff's Complaint does not state a plausible Title VII pay discrimination claim.  First, Plaintiff does not allege that she received unequal pay for equal work performed by male employees or that she was paid too little for the Grade 14 position she occupied.  In fact, she alleges that she received greater pay (Grade14 level) than other employees performing similar work (Grade 13 level or lower).  Plaintiff's grievance is that she received fewer *duties* than others who were purportedly similarly situated at Grade 14 positions, thereby depriving her of advancement opportunities available to genuine Grade14 employees.  This type of alleged discrimination does not implicate a pay disparity and is therefore not covered by Title VII's pay discrimination provisions.

18

Second, Plaintiff argues that the "other practices" language added to Title VII by the Ledbetter Act reveals that Congress intended to include all discriminatory employment practices that *relate to or affect* compensation, rather than merely those that result in actual compensation discrimination between similarly situated employees.  However, the Tenth Circuit recently rejected this interpretation of "other practices."  *See Almond*, 665 F.3d at 1180 (rejecting argument that the "'other practice' language means that the alleged act of discrimination need only *relate* to compensation").  The Tenth Circuit offered the following textual explanation for its conclusion:

> The first and core difficulty with the plaintiffs' interpretation lies in the language of the [Ledbetter] Act itself. Contrary to their view, the phrase 'when a discriminatory compensation decision or other practice is adopted' doesn't do the work of defining the class of discrimination cases to which the Act applies. Linguistically, the portion of the Act doing that task is the preceding phrase providing that "[f]or purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter. . . ." It is there that Congress defined which 'unlawful practices' are and are not affected by the Act's new accrual rules. And it is there that Congress made clear the Act's new accrual rules pertain only to 'discrimination in compensation' claims 'in violation of this chapter.'
>
> Neither is the phrase 'discrimination in compensation in violation of this chapter' some Rorschach inkblot to which we may ascribe whatever meaning springs to mind. It is instead a clear cross-reference to a specific term of art with a settled legal meaning. 'This chapter,' namely the ADEA, contains a particular prohibition on compensation discrimination in § 623(a)(1).[14] To prove such a claim, it isn't enough for an employee to show that a discriminatory practice somehow affected his or her pay. Instead, the employee must show a discriminatory pay disparity between himself or herself and similarly situated but younger employees.  In other words, 'discrimination in compensation' requires not just any effect on pay, but one of a particular kind: unequal pay for equal work.
> . . .
> But the "other practice" phrase does real and important work of its own by making clear that the accrual period for covered compensation discrimination claims is triggered not only when the pay setting decision takes place (the "discriminatory

---

[14]  Although the plaintiffs' claim in that case arose under the ADEA, the court made clear that its reasoning extended equally to the Ledbetter Act's addition of parallel language to Title VII. *See id.* at 1181.

compensation decision") but *also* when other discriminatory employment practices ("other practice[s]") that result in compensation discrimination are "adopted." So it is that the first statutory phrase tells us *which* claims are covered by the Act (those alleging unequal pay for equal work) and the second phrase, including the 'other practice' language, tells us *when* those claims accrue for limitations purposes.

*Id.* at 1180-82 (internal citations omitted) (footnote added).

Thus, the Tenth Circuit has held that "other practices" language does not expand the previously defined universe of Title VII pay discrimination claims. It simply explains that discriminatory compensation decisions or other practices resulting in compensation discrimination occur anew each time an employee is discriminatorily paid for purposes of Title VII's time limitations. As explained in *Almond*, this interpretation remedies the problem identified by the dissent in *Ledbetter*, in which the plaintiff was unaware of the discrimination motivating her performance reviews until it was too late. *See Almond*, 665 F.3d at 1182-83 ("The dissent argued that the law should take account of these other practices when setting accrual rules for compensation discrimination claims. And it is once again hardly surprising that Congress would include language to do just that, to trigger the accrual of a compensation discrimination claim not only when employers intentionally discriminate in pay-setting decisions, but also when they discriminate in other ways that cause a discriminatory pay disparity.").

Here, Plaintiff's insurmountable hurdle is that she does not allege any discriminatory compensation decisions or "other practice" that resulted in unequal pay for equal work. She alleges that the discriminatory practice of artificially classifying her as Grade 14 precluded her from being eligible for promotions. While this allegedly affected her compensation by causing it to remain stagnant, it did not allegedly cause her to be paid less than any other male Grade 14 employees. Therefore, Plaintiff has failed to state a claim for Title VII pay discrimination. *See Almond*, 665

F.3d at 1181 ("[I]t isn't enough for an employee to show that a discriminatory practice somehow affected his or her pay.  Instead, the employee must show a discriminatory pay disparity between himself or herself and the similarly situated but [outside the protected class] employees.").

**V.      Pay Discrimination Claim - Plaintiff's Motion**

For the reasons explained above, Plaintiff's Pay Discrimination Claim fails to state a claim for relief.  Therefore, Plaintiff is not entitled to summary judgment on such claim.

**VI.     Conclusion**

Plaintiff's Motion for Partial Summary Judgment (Doc. 9) is DENIED.  Defendant's Motion to Dismiss and/or For Summary Judgment (Doc. 14) is GRANTED.  Plaintiff's Pay Discrimination Claim is dismissed for failure to state a claim pursuant to Rule 12(b)(6).  Defendant is granted summary judgment as to Plaintiff's Retaliation Claim and Hostile Work Environment Claim.  A separate judgment will be entered.

SO ORDERED this 23rd Day of March, 2012.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

21